IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID BECATTINI,<br>3345 Fisher Road<br>Lansdale, PA 19446<br>                Plaintiff,<br>   v.<br>LUTRONIC CORPORATION<br>19 Fortune Drive,<br>Billerica, MA 01821<br>AND<br>JEFF KNIGHT<br>19 Fortune Drive,<br>Billerica, MA 01821<br>                Defendants. | Case No.: |

## COMPLAINT

Plaintiff David Becattini, through his undersigned counsel, files this Complaint against Defendants Lutronic Corporation and its executive, Mr. Jeff Knight, for their blatant interference with Plaintiff's rights under the federal Family and Medical Leave Act in denying him requested leave; their purposeful retaliation against him for exercising his rights under the federal Family and Medical Leave Act by later terminating him for requesting leave; and for their repeated and willful violations of Pennsylvania's Wage Payment and Collection Law. In support thereof, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.  Plaintiff is a citizen of Pennsylvania, residing at 3345 Fisher Road, Lansdale, Pennsylvania.

2. Defendant Lutronic Corporation ("Lutronic") is believed to be incorporated under the laws of Delaware with a principal place of business at 19 Fortune Drive, Billerica, Massachusetts, 01821.

3. Lutronic is part of a larger global enterprise based out of South Korea. It develops and sells devices used to perform various types of cosmetic surgeries or procedures, such as for skin rejuvenation, wrinkle reduction, scar revision, tattoo removal, hair removal, and the reduction of vascular lesions and varicose veins. Lutronic's parent company also maintains offices in Japan, China, Germany and France.

4. Defendant Jeff Knight ("Knight"), at all times material hereto acted as the President of Lutronic, working out of its United States headquarters at 19 Fortune Drive, Billerica, Massachusetts. Defendant Knight is believed to be a citizen and resident of Massachusetts.

5. This Court holds subject matter jurisdiction under 28 U.S.C. § 1331 as district courts have original jurisdiction of all civil actions arising under the laws of the United States. This Court also has jurisdiction under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 and is between citizens of different states.

6. Venue is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to these claims occurred in this District.

7. At all times material hereto, Defendants Lutronic and Knight acted as employers of Plaintiff and were subject to the terms of the Family and Medical Leave Act of 1993 ("FMLA"). At all times material hereto, as to Plaintiff, Defendants were also subject to the terms of the Pennsylvania Wage Payment and Collection Law ("WPCL").

2

8. At all times material hereto, Plaintiff was an employee under the terms of the FMLA and WPCL.

9. With regard to the matters described herein, Defendant Knight acted for, on behalf of, and as an agent of Defendant Lutronic.

## FACTUAL BACKGROUND

10. Plaintiff became employed by Lutronic in February of 2017, to serve as Lutronic's Area Sales Manager for the East Region of the United States. His compensation was always based on both a salary and on commissions generated from sales. The primary source of Plaintiff's compensation was always the commissions he earned, however.

11. While Plaintiff often traveled as part of his job responsibilities, he worked primarily out of his home office in Lansdale, Pennsylvania, always reporting directly to a superior based in the company's United States headquarters in Billerica, Massachusetts. Plaintiff would frequently travel to the company's headquarters in Massachusetts for sales and business meetings.

12. At the time Plaintiff became employed at Defendant Lutronic, the company was beginning to establish a major presence in the United States. In just 11 months during 2017, Plaintiff generated well over a million dollars in sales for Lutronic, and helped expand the company's operations.

13. During 2017, Plaintiff's sales record and his record as a Lutronic employee was exemplary.

14. About one year after Plaintiff became employed at Defendant Lutronic, Lutronic hired Defendant Knight as its President. At that point, Plaintiff began to report directly to

Defendant Knight, who was based in Massachusetts. Defendant Knight acted as President of Lutronic and Plaintiff's immediate superior throughout 2018.

15. Upon information and belief, Defendant Knight's compensation from Lutronic was based at least in part upon the sales performance of employees such as Plaintiff, and upon the amount of revenue generated from sales which were not paid out to employees such as Plaintiff, in terms of commissions.

16. During 2018, Plaintiff's efforts on behalf of Lutronic resulted in an even larger volume of sales. His sales performance from 2017 tripled during 2018, and he made an even greater contribution to expanding Lutronic's operations in the United States.

17. Again, during 2018, Plaintiff's sales record and his record as a Lutronic employee remained exemplary.

18. In November of 2018, however, Plaintiff learned that his mother was gravely ill with cancer, a serious medical condition requiring hospitalization and comprehensive ongoing medical treatment.

19. At this time of the year, Lutronic employees in Plaintiff's position typically would be busy attempting to close sales before the end of the year. However, Plaintiff needed to take a leave of his employment, to help care for his mother.

20. Plaintiff informed his superior, Defendant Knight, of his need to take leave, and why. In response, Defendant Knight told Plaintiff that he could not take leave, and that he was required to remain "in the field", closing sales, until the end of the year.

21. In late November, 2018, Plaintiff was scheduled to travel to Boston to attend a meeting with potential customers. Plaintiff advised Defendant Knight that he may have to miss the meeting in Boston, to attend to his seriously ill mother. In response, Defendant Knight

threatened Plaintiff with loss of his job, declaring that Plaintiff's attendance at the meeting in Boston was mandatory.

22. Throughout November and December, 2018, Defendant Knight made it clear to Plaintiff that if he took leave, and unless he remained "in the field" and closing sales through the end of the year, he would be fired.

23. Solely because of Defendant Knight's threats and intimidation, Plaintiff did not take leave from his position to care for his mother. Instead, he diligently worked "in the field" to close sales on behalf of Lutronic. Plaintiff made it clear to Defendant Knight, however, that once the sales year closed after December, he would take leave from his job to help care for his mother.

24. On January 3, 2019, Plaintiff unexpectedly received a call from Defendant Knight, who informed Plaintiff that he was being terminated. When Plaintiff asked for a reason for this decision, he was told that it was due to poor performance. On January 3, 2019, Plaintiff's access to Lutronic's email system was abruptly cutoff.

25. The reason propounded by Defendant Knight for terminating Plaintiff was a blatant lie and a pretext. Defendant Knight decided to terminate Plaintiff only because he knew that Plaintiff planned on taking leave after December, 2018.

26. Defendant Knight contacted at least one other Lutronic employee to attempt to gather information to support a pretext for terminating Plaintiff. That employee, however, refused to assist in manufacturing a false pretext for Plaintiff's termination.

27. On January 7, 2019, at 1:27 pm, Plaintiff wrote to Defendant Knight, stating his belief that he was being terminated because he planned to take leave to attend to his seriously ill mother. Christopher Geberth, the Chief Financial Officer of Lutronic, was copied on the email.

28. Plaintiff believes that Lutronic undertook no investigation at all of his complaints in that regard. The only response received by Plaintiff was an email sent by Mr. Geberth minutes later at 1:31 pm, on January 7, 2019, whereby Mr. Geberth informed Plaintiff that he would be paid through January 15, 2019.

29. The millions of dollars in sales generated by Plaintiff during 2018 should have triggered substantial commission payments to Plaintiff during 2019. However, after unlawfully terminating Plaintiff, Defendants now contend that most of these commissions do not have to be paid, because Plaintiff was not employed at the time that revenue on those sales was received by Defendants. That is a circumstance, however, caused solely by Defendants' illegal termination of Plaintiff.

30. Moreover, as to the portion of commissions that were paid to Plaintiff for work performed in 2018, Plaintiff believes that Defendants calculated those payments in a way that resulted in less being paid, than what was actually owed.

31. Plaintiff has demanded that Defendants provide documentation sufficient to enable him to calculate the amounts actually owed, but Defendants have refused to provide that information.

32. Indeed, Plaintiff believes that Defendants have been systematically underpaying commissions not just as to him, but as to other salespersons working for Lutronic, and that doing so became a regular business practice of Defendants, at least since Defendant Knight was hired.

33. If Plaintiff had not been unlawfully terminated, he would have been able to continue to build upon a stream of sales, and earn even more salary and commissions than he had earned in 2017 and 2018, once he returned from leave.

34. Instead, Plaintiff is now unemployed, and has so far been unable to locate a position comparable to the one he had at Lutronic.

35. Even if Plaintiff finds a comparable position quickly, it will take quite some time for him to begin generating commissions at the level he achieved at Lutronic. It took considerable effort and a serious time commitment from Plaintiff to build a client base that purchased Lutronic's devices.

36. Apart from denying Plaintiff his hard-earned commissions, Lutronic also failed to pay Plaintiff for his accrued paid vacation time, and failed to reimburse Plaintiff for submitted business expenses.

## COUNT I – INTERFERENCE UNDER THE FMLA

37. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein.

38. Defendants employed Plaintiff for longer than 12 months before the date on which his FMLA leave should have commenced.

39. Plaintiff worked at least 1,250 hours in the immediate year preceding the date on which his FMLA leave should have commenced.

40. Defendants intentionally and willfully violated the FMLA by interfering, restraining, and/or denying Plaintiff's exercise, and his attempts to exercise, his rights under the FMLA.

41. Defendants violated the FMLA including, but not limited to: (1) attempting to chill Plaintiff from exercising his rights under the FMLA; (2) exhibiting hostility towards Plaintiff's attempts to exercise his rights under the FMLA; (3) denying Plaintiff the ability to exercise his rights under the FMLA; and (4) terminating Plaintiff for engaging in protected activity under the FMLA.

42. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and will continue to suffer actual damages in the form of lost wages, salary, commissions, benefits, and other compensation.

43. Plaintiff is further entitled to liquidated damages in an amount equal to those actual damages, due to Defendants' intentional and/or bad faith violation of the FMLA.

44. Plaintiff is further entitled to recover reasonable attorney's fees and costs associated with this action.

WHEREFORE, Mr. Becattini demands judgment against Defendants for damages in an amount to be proven at trial, plus attorney's fees, liquidated damages, costs, pre- and post-judgment interest, and any other relief this Honorable Court deems just and proper.

## COUNT II – RETALIATION UNDER THE FMLA

45. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein.

46. Defendants employed Plaintiff for longer than 12 months before the date on which his FMLA leave should have commenced.

47. Plaintiff worked at least 1,250 hours in the immediate year preceding the date on which his FMLA leave should have commenced.

48. Defendants intentionally and willfully violated the FMLA by terminating Plaintiff in retaliation for him engaging in protected activity under the FMLA.

49. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and will continue to suffer actual damages in the form of lost wages, salary, commissions, benefits, and other compensation.

50. Plaintiff is further entitled to liquidated damages in an amount equal to those actual damages, due to Defendants' intentional and/or bad faith violation of the FMLA.

51. Plaintiff is further entitled to recover reasonable attorney's fees and costs associated with this action.

52. Plaintiff is entitled to recover reasonable attorney's fees and costs associated with this action.

WHEREFORE, Mr. Becattini demands judgment against Defendants for damages in an amount to be proven at trial, plus attorney's fees and costs incurred, liquidated damages, costs, pre- and post-judgment interest, and any other relief this Honorable Court deems just and proper.

## COUNT III – VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

53. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein.

54. Defendants agreed to pay "wages" to Plaintiff including in the form of commissions, reimbursed business expenses, paid vacation days, and other earnings, in exchange for Plaintiff's services as Area Sales Manager.

55. Plaintiff made timely demand upon Defendants to be fully paid all "wages" owed to him under the WPCL. For many months, Defendants have refused to pay all wages owed.

56. Defendants' refusal to compensate Plaintiff for his commissions, his vacation time, and his business expenses constitutes a willful violation of the WPCL.

WHEREFORE, Mr. Becattini demands judgment against Defendants for damages in an amount to be proven at trial, plus attorney's fees and costs incurred, liquidated damages, costs, pre- and post-judgment interest, and any other relief this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a jury trial under the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(a).

Respectfully, submitted,

Mark J. Schwemler, Esq.
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
*Attorney for Plaintiff*

Date: June 6, 2019