**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID BECATTINI,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-2464-KSM** |
| **LUTRONIC CORPORATION**, et al. | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                    **December 8, 2021**

Plaintiff David Becattini has sued his former employer, Lutronic Corporation, and his former boss, Jeffery Knight (together, "Defendants"), alleging that Defendants violated his rights under the Family and Medical Leave Act ("FMLA") by denying his request for time off to care for his sick mother and terminating him for making the request.  (Doc. No. 1.)  Becattini brings claims for interference and retaliation under the FMLA.  (*Id.* at 7–9.)  He also brings a claim under Pennsylvania's Wage Payment and Collection Law ("WPCL") for Defendants' alleged failure to pay him commissions he was owed following his termination.  (*Id.* at 9.)

Defendants have filed a motion for summary judgment, arguing that Becattini's FMLA claims must fail because he was not FMLA eligible when he requested time off given that Lutronic had fewer than fifty employees and, even if he were eligible, Lutronic terminated his employment for legitimate, non-retaliatory reasons.  (Doc. Nos. 39, 41.)  Defendants also argue that the WPCL claim fails because Becattini has failed to establish that he was owed any commissions that Lutronic did not pay.  (*Id.*)  Becattini opposes the motion.  (Doc. No. 50.)

For the reasons below, Defendants' motion is granted.

## I.     *Factual Background*

Viewing the evidence in the light most favorable to Becattini, the relevant facts are as follows.

### A.     *Lutronic's Presence in the United States*

Lutronic is a South Korea-based medical device sales company with an office in Billerica, Massachusetts.  (Doc. No. 50-1, Ex. 7 at 104, 107.)  In late 2018, Lutronic had three regional sales managers, including Becattini, who supervised teams of sales representatives. (Doc. No. 50-1, Ex. 11 at 162.)  Lutronic also had a team of approximately twelve "independent sales representatives" who were paid with checks and received IRS Forms 1099.  (Doc. No. 50-1, Ex. 1 at 111:13–112:24.)  Some of the independent sales representatives only sold products for Lutronic, but some sold products for other companies as well.  (*Id.* at 112:11–17.)  The independent sales representatives were only paid commissions—they did not receive a salary. (*Id.* at 116:6–22.)

In addition to its sales force, Lutronic also had a team of "clinical trainers," nurses who were paid a daily rate to train customers on Lutronic's devices.  (*Id.* at 113:24–114:16.)  As with the independent sales representatives, clinical trainers were paid with checks and received IRS Forms 1099.  (*Id.* at 114:17–22.)

### B.     *Becattini's Role at Lutronic*

In January 2017, Becattini was hired to serve as Lutronic's East Regional Sales Manager. (Doc. No. 39-2, Ex. C at 117.)  He was paid a base salary and earned a 2.5% commission on

sales in his region.  (*Id.*)  Becattini reported to Lutronic's Vice President of Sales[1] and supervised "between six and eight" sales representatives.  (Doc. No. 39-2, Ex. A at 78:14–24.)  In this role, he was responsible for hiring, training, and developing sales representatives, promoting Lutronic's products, and preparing sales forecasts and plans for customer retention.  (*Id.* at 78:2.)  Becattini's performance was initially measured based on the "total sales" made in his region (Doc. No. 50-1, Ex. 1 at 98:6), but when Knight took over as Vice President of Sales, he implemented a quota system, requiring each region to make a certain amount per year in sales (*id.* at 99:3–7).

### C.    *Becattini's Job Performance*

Becattini says that he never received any written or verbal performance reviews from Knight, but they did have "some discussions" about his performance.  (*Id.* at 105:21–106:15.)  In June 2018, Knight emailed Becattini requesting "a list of deals that your reps are working [on] and their updates, and which deals you expect to close."  (Doc. No. 39-2, Ex. D at 123.)  Knight explained, "I looked at the closed deals for June and nothing is happening with your reps and only one week left. . . . You were only tasked with working with your reps this month to close deals in the field.  Send updates today."  (*Id.*)  Becattini responded, "Feeling a bit under appreciated right now.  Updated forecast attached."  (*Id.*)  At his deposition, Becattini testified that he felt "under appreciated" because Knight was new to his position and did not recognize all of the sales in the pipeline.  (Doc. No. 50-1, Ex. 1 at 122:6–123:6.)

In July 2018, Knight told Becattini that he needed to focus on filling sales representative positions in New York and Philadelphia.  (Doc. No. 39-2, Ex. E at 125.)  Becattini did not fill the

---

[1] At the beginning of his tenure, Becattini reported to Jim Spivey, Lutronic's then-Vice President of Sales.  (Doc. No. 50-1, Ex. 1 at 96:10–21.)  Following Spivey's departure, Becattini began reporting to Knight, who replaced Spivey as Vice President of Sales.  (*Id.*)

positions, but he believes he was unable to do so because the compensation package Knight authorized him to offer was below the market rate.  (Doc. No. 39-2, Ex. A at 137:6–9.)

Knight also implemented a quota system for regional sales managers and sales representatives in 2018.  (Doc. No. 50-1, Ex. 1 at 99:1–7.)  Becattini's quota for 2018 was about $9.5 million, and his region only made about $3.8 million in sales.  (*Id.* at 100:3–23.)  But Becattini was not alone—none of the regional managers met their quotas in 2018.  (*Id.* at 100:14.)  Knight had formulated the quotas on an assumption that a new Lutronic device would be approved by the FDA and boost sales, but the FDA never granted approval of that device, so the accompanying increase in sales was not realized.  (*Id.* at 102:13–23.)  Although he fell short of his quota, Becattini's region was "the number one region in the country."  (*Id.* at 101:2–3.)

### D.    *Becattini's Request for Time Off*

In November 2018, Becattini informed Knight that his mother had been diagnosed with late-stage lung cancer and he would "need time off" to care for her because his father was elderly and unable to do so.  (*Id.* at 151:15–152:6.)  Knight refused his request and told Becattini that he needed to be "in the field" closing sales through the end of the year.  (*Id.* at 153:16.)  Later that month, Becattini told Knight again that he needed to be with his mother, but Knight told him that he would be terminated if he did not stay in the field through the end of the year.  (*Id.* at 154:12–155:5.)  Becattini stayed in the field through the end of 2018.  (*Id.* at 160:18–161:1.)

### E.    *Becattini's Termination*

On January 3, 2019, Knight called to inform Becattini that he was being terminated effective January 15, 2019.  (*Id.* at 162:4–15.)  Knight offered several explanations for the

termination:  Becattini's poor performance,[2] alleged issues between Becattini and a female subordinate, and that Becattini was interviewing for other jobs.  (*Id.* at 163:11–24.)

After Becattini's termination was effective, Lutronic's Chief Financial Officer sent Becattini a letter with his final commission check.  (Doc. No. 39-2, Ex. I.)  The letter explained that the check included "commissions earned on sales for which payment in full has been received by the customer."  (*Id.* at 143.)  Becattini was not paid commission on a "big deal" with a day spa client (*id.* at 148:2–6), but he did not earn that commission because the deal with the day spa never closed and the day spa never paid Lutronic (*id.* at 148:19–149:4; Doc. No. 39-2, Ex. J ¶ 8).  Under Lutronic's commission policy, if a customer "returned the equipment and never paid anything, . . . [regional managers] would not be entitled" to commissions.  (Doc. No. 50-1, Ex. 1 at 16:17–24.)

## II.    *Procedural History*

On June 6, 2019, Becattini commenced this action, asserting claims for interference and retaliation under the FMLA and a claim under the Pennsylvania's WPCL.  (Doc. No. 1.)  At the end of fact discovery, Defendants moved for summary judgment on all three counts.  (Doc. No. 39.)  As a threshold matter, Defendants argue that Lutronic was not covered by the FMLA when Becattini requested time off to care for his mother because it did not employ 50 or more employees in any 20-week period in the two years prior to Becattini's request.  (*Id.* at 8.)  Defendants also argue that, even if Lutronic were a covered employer, Becattini's FMLA claims still fail because Lutronic had a legitimate reason for terminating Becattini and Becattini cannot establish a causal connection between his request for leave and his termination.  (*Id.* at 11–14.)

---

[2] Lutronic terminated another regional sales manager (who also reported to Knight) for poor performance in 2018.  (Doc. No. 50-1, Ex. 1 at 110:3–111:6.)  That sales manager never requested any medical leave prior to his termination.  (*Id.*)

5

Finally, Defendants argue that Becattini's WPCL claims fail because he has not presented any evidence showing that he was entitled to any commissions he did not receive.  (*Id.* at 15.)  Becattini opposes the motion.[3]  (Doc. No. 50.)  The Court held oral argument on November 30, 2021.  (Doc. No. 49.)

## III.    *Standard of Review*

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  "[T]he inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

---

[3] Becattini's initial response opposing Defendants' motion was not in compliance with the Court's policies and procedures.  (*See generally* Doc. No. 40.)  In their reply brief, Defendants argued Plaintiff's "Factual Background" section should be struck for failure to follow the Court's policies and procedures.  (Doc. No. 41 at 4–5.)  The Court agreed and ordered Becattini to file a response brief that complied with the Court's policies and procedures, which Becattini subsequently filed on November 19, 2021.  (Doc. No. 50.)

**IV.**    *Discussion*

Becattini asserts claims for FMLA interference and retaliation (Doc. No. 1 at 7–9) and a claim for violation of the WPCL (*id.* at 9).

The Court discusses the FMLA and WPCL claims in turn below.

**A.**    ***FMLA Interference and Retaliation Claims***

**1.**    **Lutronic's Status as an FMLA-Covered Employer**

Becattini claims that Lutronic and Knight interfered with his right to take FMLA leave and retaliated against him for doing so.  (*Id.* at 7–9.)  For Becattini to succeed on these claims he must, as a threshold matter, show that he was eligible for FMLA leave.  *See Ross v. Gilhuly*, 755 F.3d 185, 191–93 (3d Cir. 2014) (explaining that, to make a claim for FMLA interference or retaliation, a plaintiff must establish that he was an "eligible employee under the FMLA" (internal citations omitted)).  The parties agree that, if Lutronic were a covered employer, Becattini was an FMLA-eligible employee (Doc. No. 39 at 15; Doc. No. 50 at 14); however, Defendants argue that Becattini's claims must fail because Lutronic was not a covered employer at the time Becattini requested FMLA leave (Doc. No. 39 at 15).

The FMLA covers employers who employ "50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i); *see also Ross*, 755 F.3d at 193 (explaining that the burden lies on the plaintiff to state a prima facie case of discrimination, which includes showing he was entitled to FMLA benefits); *Kobielnik v. W. Cape May Bd. of Educ.*, Civil Action No. 13-03805 (RMB/JS), 2015 WL 12743598, at *2 (D.N.J. Mar. 11, 2015) ("[I]f a plaintiff cannot show that her employer employs the requisite minimum number of employees, dismissal of an FMLA claim is proper.").  Becattini has failed to identify any evidence in the record showing that Lutronic had 50 or more employees in each of the 20 weeks leading up to his request for FMLA leave (or in

7

any 20 consecutive workweeks in the two years prior to his request).  In fact, Lutronic's payroll records show that they did not hire their fiftieth employee until November 26, 2018 (*see* Doc. No. 39-2, Ex. B at 88–111), which is *after*, and certainly not 20 weeks before, Becattini requested leave.

Becattini argues that the payroll records are not dispositive because, in addition to its salaried employees, Lutronic employed "independent sales representatives" and "clinical trainers" who were paid as independent contractors but were, in reality, employees.  (Doc. No. 50 at 15–17.)  Even assuming *arguendo* that all of the independent contractors Lutronic employed were actually employees, Becattini has still failed to present any record evidence that Lutronic had 50 or more employees in each of the 20 weeks leading up to the day he requested leave or in any 20-week period in the two years prior to his request for leave.  The only evidence in the record showing how many independent contractors worked for Lutronic is a single organizational chart showing the number of employees and independent contractors hired by Lutronic as of October 1, 2018.  (Doc. No. 50-1, Ex. 11.)  Becattini bears the burden of showing that Lutronic had 50 or more employees in *each* of the 20 weeks leading up to the day he requested leave.[4]  He has not done so.

Because Becattini has not presented any evidence that Lutronic had 50 or more employees in any 20-week period in the two years leading up to his request for FMLA leave, he has failed to prove that he was entitled to FMLA leave.

---

[4] The parties have not identified the exact day Becattini requested leave, but Becattini says he requested leave "[j]ust prior to Thanksgiving in 2018." (Doc. No. 50-1, Ex. 1 at 151:21–22.)  In 2018, Thanksgiving was on November 22, so Becattini must show that Lutronic had 50 or more employees each week from approximately the first week in July through "just prior to Thanksgiving" or in any 20-week period in the two years prior to November 22, 2018.

## 2.    Becattini's Reliance on Lutronic's Handbook

Becattini also argues that, regardless of Lutronic's status as a covered employer, it was required to provide FMLA leave because its employee handbook "*admits* that it is subject to the FMLA."  (Doc. No. 50 at 18 ("Defendants *admit* that they are subject to the FMLA in the handbooks they distribute to employees. . . . That admitted fact alone should be enough to overcome Defendants' assertion that they are immune from liability under the FMLA." (emphasis in original).)  Although he cites no case law and does not use this terminology, Becattini appears to be arguing that Lutronic is equitably estopped from denying its employees FMLA leave.  The traditional elements of equitable estoppel apply in the FMLA context—a party must show "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment."  *Leese v. Adelphoi Vill., Inc.*, 516 F. App'x 192, 194 (3d Cir. 2013) (quoting *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)).  Defendants argue that Becattini is not entitled to equitable estoppel because he cannot satisfy the reliance element. (Doc. No. 41 at 5–6.)

Lutronic's 2014 employee handbook, which was in effect at the time Becattini requested leave, states, "Employees who have been employed for at least 12 months prior to the start of the leave, have worked for a total of at least 1,250 hours during the 12 months and are eligible for other benefits *may have a right to family and medical leaves*.  FMLA leaves are for up to 12 work weeks per year . . . for *eligible* full-time employees."[5]  (Doc. No. 50-1, Ex. 6 at 77

---

[5] Becattini also argues that Lutronic's revised employee handbook, which was issued in January 2019, shows that Lutronic concedes it was subject to the FMLA. (Doc. No. 50 at 14–15.)  The Court disagrees.  The revised employee handbook is not relevant to Becattini's claim.  It was issued several months *after* Becattini requested FMLA leave (*see* Doc. No. 50-1, Ex. 7 at 1), so he could not have relied on representations contained therein in requesting leave.  *See Palan*, 653 F. App'x at 102 (holding that the plaintiff's equitable estoppel claim failed where the evidence showed he had not relied upon the employer's representations); *cf. Renart v. Chartwells*, 122 F. App'x 559, 561 (3d Cir. 2004) (affirming ruling that the plaintiff's equitable estoppel claim in the New Jersey Family Leave Act context failed

(emphases added).)  This is not a misstatement, nor is it an admission by Lutronic that it is a covered employer under the FMLA.  *See Goode v. Heritage Hospice, Inc.*, Civil Action No. 5:10–342–KKC, 2012 WL 1038669, at *4 (E.D. Ky. Mar. 26, 2012) ("[T]he handbook's citations and references to the FMLA are not specific or definite misrepresentations that [the plaintiff] was eligible for FMLA leave . . . .").  *Contra Palan v. Inovio Pharms. Inc.*, 653 F. App'x 97, 101–02 (3d Cir. 2016) (holding that statement in handbook that the plaintiff was an "eligible employee" and "entitled to leave under the FMLA" even though the plaintiff was not FMLA eligible was a misrepresentation upon which the plaintiff's equitable estoppel claim could be based).  Rather, it is an accurate statement of the law:  if Becattini worked the FMLA minimum number of hours and was employed for the minimum amount of time, he *may* have been eligible for FMLA (*if* Lutronic were a covered employer).  *See Budhun v. Reading Hosp. & Med. Corp.*, 765 F.3d 245, 252 n.2 (3d Cir. 2014) ("[I]n order to be entitled to benefits, an employee must be eligible for FMLA protections and leave, work for a covered employer, and provide sufficient notice.")  Because Lutronic did not misrepresent its employees' eligibility under the FMLA, Becattini does not have a claim for equitable estoppel.

And even if the statements in Lutronic's employee handbook *were* misstatements, Becattini's equitable estoppel claim nevertheless fails because there is no evidence that he relied on the handbook.  In his deposition, Becattini admitted that he did not review—and thus could not have relied upon—Lutronic's employee handbook.  (*See* Doc. No. 39-2, Ex. A at 85:20–86:21 ("I don't recall ever[] seeing an employee handbook.").)  If a plaintiff cannot identify evidence that he read the handbook containing the alleged misrepresentation about FMLA leave,

___

because "her own testimony foreclosed the argument that she had relied on any of [her employer's] representations about her eligibility for leave").

his equitable estoppel claim must fail.  *See Palan*, 653 F. App'x at 102 ("[Plaintiff's] testimony at his deposition that he could not recall whether he had ever read, or even received the company handbook foreclosed the argument that [he] had relied on any of [the employer's] representations about his eligibility for leave." (cleaned up)).

Because Becattini cannot show that Lutronic misrepresented his eligibility for FMLA leave or, even if it did, that he relied upon that misrepresentation, his argument that Lutronic is equitably estopped from disputing his FMLA eligibility has no merit.

*     *     *

Becattini has failed to show that he was entitled to FMLA leave because he has not shown that Lutronic was an FMLA-covered employer or that Lutronic is equitably estopped from contesting his FMLA eligibility.  Accordingly, the Defendants' motion for summary judgment on Becattini's FMLA interference and retaliation claims is granted.

### B.    *Pennsylvania Wage Payment and Collection Law*

Becattini also claims that Lutronic violated the WPCL by failing to pay him approximately $42,000 in commission payments.  (Doc. No. 50-1, Ex. 1 at 146:11–12; Doc. No. 50 at 30.)  "[T]he WPCL does not create a right to compensation; rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages."  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (2003).  To prove a WPCL claim, a plaintiff must show (1) that he was contractually entitled to certain wages; and (2) that he was not paid those wages.  *Id.*  Wages includes "all earnings of an employee, regardless of whether determined on time, task, piece, *commission*, or other method of calculation."  43 Pa. Stat. Ann. § 260.2a (emphasis added).  Defendants argue that Becattini has not shown that he is entitled to *any* commissions, so this claim must fail.  (Doc. No. 39 at 14–16.)

Where a plaintiff is unable to offer evidence that he is entitled to a commission payment,

11

the court must grant summary judgment on his WPCL claim.  *See Stiffler v. Equitable Resources, Inc.*, No. Civil Action No. 05-1112, 2006 WL 2794548, at *17 (W.D. Pa. Sept. 27, 2006) (granting summary judgment on WPCL claim where "Plaintiff can offer no evidence other than his own misunderstanding that" he was entitled to commission).  Becattini testified that he is entitled to approximately $42,000 in unpaid commissions (*see* Doc. No. 50-1, Ex. 1 at 146:11–12), but that he "can't tell you every single one [i.e., sale on which he is entitled commission] specifically" (*id.* at 146:18–19).  He explained that he recalls a "very large order" to a day spa, which would have entitled him to roughly $35,000 in commission.  (*Id.* at 146:22–148:8.)  But the sale to the day spa fell through[6] (Doc. No. 39-2, Ex. J ¶ 8), and, pursuant to Lutronic's Commission Plan, Becattini's employment contract, and Becattini's own admissions, employees only earn commissions "when the company product ships and is fully paid for by the customer" (*id.* at 140:19–141:3).  Because Lutronic was not paid for the sale to the day spa, Becattini did not earn any commission on that sale, and his WPCL claim as to this commission fails as a matter of law.  *See Donaldson v. Informatica Corp.*, Civil Action No. 08–605, 2009 WL 4348819, at *15 (W.D. Pa. Nov. 30, 2009) ("[T]here is no evidence that [the employer] had any contractual obligation to pay [the plaintiff] the commissions and/or other wages he seeks in this lawsuit.  Accordingly, [the plaintiff's] WPCL claim fails as a matter of law, and Defendant's motion for summary judgment as to this claim is granted."); *Sendi v. NCR Comten, Inc.*, 619 F.

---

[6] Becattini has not offered any evidence that the sale to the day spa was consummated; in fact, he has testified that he does not "know if and when [Lutronic] got paid for that sale."  (Doc. No. 50-1, Ex. 1 at 147:7–8; *see also* Nov. 30, 2021 Hr'g Tr. at 39:1–9 (Becattini's counsel admitting that he did not include any evidence that the sale to the day spa went through in the record).)  As such, there is no factual dispute that the sale did not go through.  *See Bansept v. G&M Auto.*, --- F. Supp. 3d ---, CIVIL ACTION NO. 18-04679, 2021 WL 3784241, at *4 (E.D. Pa. Aug. 26, 2021) (granting summary judgment in favor of employer on WPCL claim because the plaintiff failed to create factual dispute as to whether he was entitled to compensation).

Supp. 1577, 1580 (E.D. Pa. 1985) (granting employer's motion for summary judgment on WPCL claim where "[t]he commissions plaintiff seeks were not payable under the [Commission] Plans and were thus not earned for the purpose of the WPCL").[7]

Becattini also claims that he is entitled to roughly $8,000 in additional commissions on smaller sales; however, at his deposition, he was not able to identify the sales "implicated by that additional $8,000" because he did not "have that information in front of [him]." (*Id.* at 148:13–18.) Likewise, the record does not contain any evidence that Becattini is entitled to any additional commission. (*See generally* Doc. No. 50-1; Nov. 30, 2021 Hr'g Tr. at 23:18–24 (Becattini's counsel admitting that Becattini's conclusory deposition testimony that he was entitled to an additional $8,000 was the only record evidence that he was entitled to any additional commission).) Conclusory allegations that a plaintiff is entitled to some form of wages without further evidence that the employer actually owes those wages are insufficient to survive summary judgment. *See Lejeck v. MBH Sols., Inc.*, No. 02:06cv342, 2007 WL 2743677, at *8 (W.D. Pa. Sept. 18, 2007) (granting the employer's motion for summary judgment where the plaintiff "failed to establish the existence of any unpaid commissions"); *Dardaris*, 2007 WL 1300235, at *5 (granting defendant's motion for summary judgment on WPCL claim where the "Plaintiff has failed to highlight for the Court *which* commissions remain unpaid" and "has not produced any evidence—employment contract, receipt, or invoice—showing that she was entitled to any specific payments that she did not receive").

Because Becattini cannot show that he was entitled to any commission payments he did

---

[7] Becattini fails to provide any evidence such as pay stubs or invoices to support his claim that he is entitled to commissions. *See Dardaris v. Dental Org. for Conscious Sedation*, Civil Action No. 06-947, 2007 WL 1300235, at *5 (E.D. Pa. May 3, 2007) (holding that a plaintiff must present evidence in the form of receipts, pay stubs, invoices, or the like showing that he was entitled to the commission he seeks to recover to survive summary judgment).

not receive, the Court grants Defendants' motion for summary judgment on the WPCL claim.

## V.    *Conclusion*

For the reasons above, the Defendants' motion for summary judgment is granted.  An appropriate Order follows.